

## In United States District Court for the Central District of Illinois

## URBANA DIVISION

| | |
|---|---|
| Michael B. Hari,<br><br>    Plaintiff,<br><br>v.<br><br>Sonny Perdue, & Alex Michael Azar II,<br><br>    Defendants. | Civil Action No.: 18-2059<br><br>**PLAINTIFF'S FIRST AMENDED COMPLAINT** |

Plaintiff Michael B. Hari, Pro Se (hereafter Plaintiff) alleges as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to Burr v. FHA, 28 U.S.C. § 1331(a), and 42 U.S.C. § 1985.

2. Plaintiff brings this lawsuit for violations of his rights under the 10th Amendment and the Due Process Clause of the United States Constitution; declaratory relief against enforcement of the FDA Food Safety Modernization Act under the Declaratory Judgments Act, 28 U.S.C. §§ 2201 2202; judicial review under the Administrative Procedure Act; (5 USC § 702); and separately injunctive relief, punitive, and compensatory damages under 42 USC § 1985.

3. Venue is proper in this district pursuant to 28 U.S. Code § 1391 e (1) because defendants are employees of an agency of the United States acting in their official capacity or under color of legal authority, a substantial part of the events giving rise to the claim occurred in the district, and the plaintiff resides in the district and there is no real property involved.

# THE PARTIES

## THE PLAINTIFF

3. **Plaintiff Michael B. Hari** resides in Clarence, Illinois. He was employed in growing watermelon from 2005-2006, 2007-2009, and 2014-2015. He has also owned Equicert, an agricultural food safety auditing business since 2008.

## THE DEFENDANTS

4. **Sonny Perdue** is the United States Secretary of Agriculture, and is named in his official capacity only.

5. **Alex Michael Azar II** is the United States Secretary of Health and Human Services and is named in his official capacity only.

## SUMMARY

6. This complaint involves two counts.

### COUNT 1

7. The United States Department of Agriculture, acting through their Agricultural Marketing Service, has engaged in the business of offering food safety audits to produce farmers in competition with private enterprise, including the Plaintiff's business, Equicert.

8. The defendant, by engaging in this business as described in this

Complaint, has transgressed against the Constitution of the United States, as engaging in this private business is not one of the powers delegated to the Executive Branch by Article II or elsewhere.

9. The right to engage in this private business belongs properly and exclusively to the people, as one of the rights reserved to the people by the 10th Amendment: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." In unlawfully engaging in this business, the Defendant has damaged the business of the Plaintiff and others engaged in that business and has caused an injury to the Plaintiff.

10. The People of the United States have rejected the Marxist doctrine that the government shall own the means of production, have fought and won an extensive Cold War against that doctrine, and it is offensive to the very notion of a free market system, private property, Americanism, and the Constitution that the Secretary of Agriculture is conducting a government owned business in competition with the free market and in accordance with the tenets of Marxism.

11. The Defendant Perdue and others unnamed have conspired to deprive Plaintiff of his rights under the 10th Amendment to the Constitution of the United States, depriving him of work, causing him injury, and in so doing have violated 42 USC 1985.

## COUNT 2

12. The United States Department of Agriculture and the Food and Drug Administration have engaged in a series of acts directed toward the regulation of

the agricultural production of produce pursuant to the FDA Food Safety Modernization Act (FSMA) since 2011.

13. These acts have included issuing regulation requiring the registration of agricultural facilities, requiring training for agricultural employees, requiring some agricultural practices, and prohibiting other agricultural practices.

14. The FSMA law has also criminalized the act of raising produce considering to be "adulterated," and threatens farmers who have raised adulterated produce with criminal penalties such as fines and jail time.

15. While federal regulation of agriculture since the days of *Wickard v. Filburn*, 317 U.S. 111 (1942) has relied upon the doctrine that a nexus to interstate commerce is required in order for the law to meet constitutional muster, no mention of the regulation of interstate trade or the effect on interstate trade is made whatsoever in the FDA FSMA. The FDA FSMA very strongly resembles the 1990 Gun Free Schools Act struck down by *United States v. Alfonso D. Lopez*, Jr., 514 U.S. 549 (1995) in that it includes no relation to interstate commerce.

16. Federal regulation of food, including the various Food and Drug Acts has relied upon some relation to interstate commerce, including the 1948 Miller Amendment Act to the Pure Food & Drug Act, which stated that the law applied to drugs "after shipment in interstate commerce." 62 STAT. 582 (1948), 21 U.S.C. § 331 (k) (Supp. 1951).

17. Court decisions on the constitutionality of the Pure Food and Drug Acts included a great deal of discussion on the question of interstate commerce. *United States v Sullivan*, 332 U.S. 689, 68 S. Ct. 331, 92 L. Ed. 297 (1948).

18. The FDA, in their answer to comments on the final rule, states in part, "**FDA disagrees with the comments regarding application of this rule to activities that are intrastate in character.**" Docket No. FDA-2011-N-0920, *Current Good*

*Manufacturing Practice, Hazard Analysis, and Risk-Based Preventive Controls for Human Food A Rule by the Food and Drug Administration on 09/17/2015* II. Legal Authority Section D "Comments on Legal Authority"). In subsection C of the same document FDA asserts: "FDA concludes that the provisions in subpart C and related requirements in subparts A, D, F, and G should be applicable to activities that are intrastate in character. Facilities are required to register under section 415 of the FD&C Act regardless of whether the food from the facility enters interstate commerce (§ 1.225(b)). The plain language of section 418 of the FD&C Act applies to facilities that are required to register under section 415 (section 418(o)(2) of the FD&C Act) and does not exclude a facility from the requirements because food from such a facility is not in interstate commerce. Further, the prohibited act provision associated with section 418 (section 301(uu) of the FD&C Act) does not require interstate commerce for a violation." Returning to subsection D, the FDA cites *Wickard v. Filburn*, 317 U.S. 111 (1942). *United States v. Lopez*, 514 U.S. 549, 567 (1995). *U.S. v. Morrison*, 529 U.S. 598, 618 (2000). None of these citations, least of all *Lopez,* support FDA's assertion of power to regulate intra-state trade without any reference to inter-state trade or even an influence on interstate trade (as in *Wickard*). Reference to sections of the FD & C act that also appear to violate these decisions do nothing to strengthen their argument. FDA's assertion of a bald power of the Executive Branch to regulate essentially anything, interstate or intrastate, cannot be found in the Constitution.

19. The definition of adulterated includes any amount of certain "pathogenic" microbes, which are invisible to the naked eye, and so common that established science regards them as "ubiquitous."

20. No set of farm practices can eliminate all instances of these "pathogenic" microbes entirely from the food chain.

Plaintiff's Original Complaint            - 5 -

21. The "pathogenic" microbes are not something that farmers add to produce, they are naturally present in the soil prior to the produce growing there.

22. Fresh produce farming is unique, in that there is no "kill step" in the production of fresh produce as there is in the production of other foods that eliminates the risk of food borne illness.

23. For illnesses to result, ingestion of the "pathogenic" microbe is not sufficient. Ingestion of the "pathogenic" microbe is only a contributing factor to development of illness. The development of illness depends not only on consumption of "pathogenic" microbes, but also other factors such as suppression of the immune system. Consumption of pathogenic microbes is a commonplace occurrence as they are ubiquitous in our environment, many colonize our lower digestive tract without ill effect, and indeed external parts of our own bodies are covered with them. Because of this, the adoption of the standards of the 1906 Pure Food and Drug Act under FSMA making any amount of a pathogenic organism sufficient to declare that produce adulterated are not legally or scientifically appropriate to produce farming.

24. The FSMA potentially criminalizes all produce farming, since no farmer can tell if he is selling produce that is contaminated or not and no set of farming best practices can eliminate the risk of contamination occurring.

25. Passage of the FSMA has resulted in thousands of acres of fresh produce ground being switched over from produce ground to grain farming or pasture in an attempt by farmers to avoid the draconian penalties of the law. The Plaintiff is one of those who has been driven out of produce farming by the fear of application of the FSMA law, and has been injured by the Defendants by being driven out of his chosen field of work.

26. The law also has a disparate effect on small growers who are not as able to shield themselves by corporate ownership, insurance, and are less able to pay off FDA with large fines to avoid criminal charges.

27. The Defendants do not have sufficient justification for their burdens on Plaintiff's practice of agriculture.

28. Defendants Perdue and Azar are vested by statute with powers and duties to include enforcement of the Act. FDA FSMA permits Defendants to delegate those powers and duties to other unnamed and known, and unknown persons who work in conspiracy with Defendants. In carrying out these deeds in furtherance of the aims of the FDA FSMA, Perdue, Azar, and others unknown conspired to deny the Plaintiff of his due process rights in violation of 42 USC 1985.

29. Plaintiff has no other adequate legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to his constitutional rights. Plaintiff availed himself of the opportunity for public comment by raising these concerns during the public comment period for FSMA regulation, which concerns were not heeded by the Defendants. The Administrative Review Act grants a right of judicial review to "a person suffering suffering wrong because of agency action, or adversely affected or aggrieved by agency action." (5 USC 702)

30. Unless Defendants are enjoined, the Plaintiff will continue to suffer injury.

## ARGUMENT AND AUTHORITIES

## COUNT 1

31. By operating an auditing firm under the control and ownership of the Executive Branch in competition with a myriad of private businesses including the Plaintiff's, the Secretary of Agriculture is not just making a bad policy decision. He is in violation of the Constitution because no such power is contemplated for the Executive Branch in the Constitution. Where the USDA AMS is involved with the inspection of fruits and vegetables under law or a governmental standard, that is an appropriate exercise of Executive Branch authority under Article II. But in going into the business of doing industry standard audits, the Secretary transgresses both against the limits of the enumerated powers of the Executive Branch and against the powers retained by the people in the 10th Amendment. Private enterprise is a sacred right retained by the people under the 10th Amendment and cannot be usurped by the Executive Branch of the Federal Government. To what purpose were the lives lost in Korea, in Vietnam, and in countless nameless fights against international communism in our Cold War if not for the purpose of saving the ownership of the means of production for private enterprise. When American soldiers were actually in the field against the Communist foe, President Truman attempted to seize and operate the American steel industry to stop a strike that threatened to slow war production. In Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579 (1952), the US Supreme Court refused to permit the intrusion of the Executive Branch into private industry without congressional authorization even during wartime. This much less severe but equally Marxist intrusion into the private sphere by the Executive likewise needs to be curtailed.

32. Defendants have no congressional authorization to operate the auditing business.

33. Plaintiff has express right to remedy under 42 U.S.C. § 1985.

## ARGUMENT AND AUTHORITIES: COUNT 2

34. The FDA FSMA has handed unprecedented power to both the USDA and the FDA. The list of unprecedented powers give to FDA by the act is impressive: mandatory recall, the seizure of private property, mandatory produce safety standards, mandatory preventive controls, mandatory inspections, mandatory registrations, mandatory training for farmers and employees, and even the ability to fine and imprison. This massive expansion of federal government power over agriculture is accompanied by not so much as a nod of the head to the notion that an interstate commerce nexus is required. Since Wickard v. Filburn, 317 U.S. 111 (1942), government regulation of agriculture (and government regulation in general) has relied upon that all-important tip of the hat to interstate commerce. The FSMA law resembles no other law so much as the 1990 Gun Free School Zone law struck down in United States v. Alfonso D. Lopez, Jr., 514 U.S. 549 (1995) in that it includes no relation to interstate commerce. In fact, during debate on the FSMA law, it was suggested and rejected that an exception for agricultural products that did not cross state lines would be placed in the bill. Instead, exceptions were laid out regarding the size of the business and the number of miles product traveled. Federal regulation of food, including the various Food and Drug Acts has relied upon some relation to interstate commerce, including the 1948 Miller Amendment Act to the Pure Food & Drug Act, which stated that the law applied to drugs "after shipment in interstate commerce." 62 STAT. 582 (1948), 21 U.S.C. § 331 (k) (Supp. 1951). Court decisions on the constitutionality of the Pure Food and Drug Acts included a great deal of discussion on the question of

interstate commerce. United States v Sullivan, 332 U.S. 689, 68 S. Ct. 331, 92 L. Ed. 297 (1948).

35. The extension of similar requirements of the Pure Food and Drug Act of 1906 (P.L. 59-384, 34 Stat. 768) to produce farmers raises special due process concerns, and has led the Plaintiff along with many others to leave the produce field. The Pure Food and Drug Act of 1906 regards any amount of an "adulterant" as impermissibly and criminally contaminating product. When the adulterant is saw dust or chalk added to flour, as was the case in 1906, it is hard to see how a conscientious processor could become an innocent victim. In the case of the FDA FSMA law, however, the "adulterant" is "pathogenic" bacteria. Bacteria are not something that unscrupulous farmers add to produce in order to stretch the product and defraud the public. Bacteria, including "pathogenic" bacteria, are ubiquitous in the environment. Making farmers civilly and criminally liable for penalties for conditions which they did not cause, cannot detect, and have no responsibility for is an obvious due process problem. Pathogenic bacteria called *Staphylococcus aureus* are part of the normal flora of the body. They live in the area between the nose and mouth on the skin. They are also a "cause" of "food poisoning." Obviously, a bacteria that lives between the nose and mouth on the skin regularly contacts food entering the mouth, and yet does not cause illness. The reason for this is because the stomach acids kills such bacteria when they arrive in the body. Many other pathogenic bacteria such as *Clostridium perfringens* and *Listeria monocytogenes* live in soil. Produce grows in soil, hence on frequent occasions it is in contact with bacteria. Why aren't people sick more? Because the human

body is meant to eat such food. It's only when something else goes wrong that we begin to get sick.

Even the dreaded *Escherichia coli* O157:H7 serotype, which appearance is heralded by the press as though it were a potent pestilence striking down maid and lad alike in the power of their youth is noted as "sometimes asymptomatic," because it takes more than exposure to pathogenic bacteria to get sick. We are exposed to pathogenic bacteria every day. The key is that it is primarily the very young (under 5), the very old, and people whose immune systems are compromised who get sick from commonplace exposures. Instead of publicizing the risks that our vulnerable population is exposed to and helping them learn how to limit exposure, the government is threatening farmers with jail time for bacteria being found upon produce *which grows in soil*. The food borne illness outbreak is not a farming problem, least of all in a population that places their produce in the same seat of the grocery cart that a diapered toddler last used. The extension of this definition of "adulterated" to fresh produce is a violation of the due process rights of all farmers, including the Plaintiff. It forces every farmer to consider whether he will take a chance on a felony conviction or go to work as a farmer, and that isn't right.

29.     It is also a violation of the Plaintiff's right to engage in his trade, which is recognized by federal courts as so fundamental a right as to be subject to federal protection in *Butchers' Union Slaughterhouse Co. v. Crescent City Live-Stock Landing Co.*, 111 U.S. 746, 756-57 4 S.Ct. 652 (1884), where Justice Field wrote of monopolies: "They are void because they interfere with the liberty of the individual to pursue a lawful trade or employment." Justice

Field went on to say, "Among these inalienable rights, as proclaimed in that great document, is the right of men to pursue their happiness, by which is meant the right to pursue any lawful business or vocation, in any manner not inconsistent with the equal rights of others, which may increase their prosperity or develop their faculties, so as to give to them their highest enjoyment. The common business and callings of life, the ordinary trades and pursuits, which are innocuous in themselves, and have been followed in all communities from time immemorial, must therefore be free in this country to all alike upon the same conditions. The right to pursue them, without let or hindrance, except that which is applied to all persons of the same age, sex, and condition, is a distinguishing privilege of citizens of the United States, and an essential element of that freedom which they claim as their birthright." See also *Dent v. West Virginia*, 129 U.S. 114, 121, 9 S. Ct. 231 (1889), *Allgeyer v. Louisiana*, 165 U.S. 578, 589-90, 17 S.Ct. 427 (1897). These rights have been protected as well from interference by the states by the Privileges and Immunities Clause of Article IV. *McBurney v. Young*, (US 4th Circuit, 2012), *Toomer v. Witsell*, 334 U.S. 385, 396 (1948); *United Bldg. & Constr. Trades Council v. Camden*, 465 U.S. 208, 219 (1984). Courts have also extended protection from state interference in the choice of trade under the 14th Amendment *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923).

30. Plaintiff has express right to remedy under 42 U.S.C. § 1985 in that pursuant to this unconstitutional act and its regulation, two or more persons (working for USDA and FDA) conspired, for the purpose of depriving, either directly or indirectly, the plaintiff of the equal protection of the laws, or of equal privileges and immunities under the laws. "A cause of action and damages remedy can be

implied directly under the Constitution when the Due Process Clause of the Fifth Amendment is violated." Cf. Bivens v. Six Unknown Fed. Narcotics Agents, 403 U. S. 388; Butz v. Economou, 438 U. S. 478. Pp. 442 U. S. 233-249. Quoted from Davis v. Passman, 442 U.S. 228 (1979).

31. The right to farm is among the "fundamental rights" enumerated by Justice Bushrod Washington and placed on a level with the right to travel and to own property, and ranked as deserving of protection under the Privileges and Immunities Clause of Article 4, Section 2 of the Constitution. *Corfield v. Coryell*, 6 F. Cas. 546 (1823).

32. The right to farm must be considered to be as fundamental as the right to eat, because the right to farm is the right to eat. The right to eat is the right to live. If a purveyor of contraceptive materials has the right to sue to maintain the rights of his customer *Griswold v Connecticut* 381 U.S. 479, it is certainly no stretch to say that a farmer has standing to represent the rights of his customers.

33. In the FDA FSMA, Congress has suddenly found a right to regulate agriculture that has lain, apparently, unfound and undreamed of in the Constitution of the United States for 221 years. If the Founders had any inkling that Congress would one day find in the Constitution the right to register, regulate, fine, and imprison farmers for nothing more than the usual practices of agriculture, they surely would have shaken their heads.

34. Farming isn't just a "lawful calling," Farming is the only essential occupation. Societies can get along without mechanics, doctors, or lawyers, but the civilization that attempts to get along without farmers is doomed. The average farmer today is 58 years old, and that is up five years from ten years ago. If something isn't done to prevent farmers from leaving the field, serious problems will result for more people than just farmers. It is worth noting that most of the famines in modern history have not been caused by natural disasters, but as the famines of Ethiopia, the Soviet Union, and Venezuela demonstrate: by farmers being unwilling to work under conditions their supposed superiors in government considered reasonable regulation. By driving farmers out of agriculture, the FDA FSMA is contrary to the public interest.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that the Court:

### I.

Issue declaratory judgement that USDA AMS's practice of doing business as an auditing company in competition with private audit companies violates the 10th Amendment to the Constitution and is not a power delegated to the Executive Branch, but is rather reserved to the people.

### II.

Issue declaratory judgement that the FDA FSMA act violates the Constitution of the United States.

### III.

Issue judgments, permanently enjoining each defendant and his agents, servants, employees and attorneys, and those persons in active concert or

participation with any of them, who receive actual notice of the order by personal service or otherwise, and each of them, from enforcing any provision of the FDA FSMA.

### IV.

Order defendant Perdue to disgorge all ill-gotten gains from USDA AMS's audit program since 2010 and to pay those to the Plaintiff.

### V.

Order defendants to pay penalties to Plaintiff and entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

### VI.

Order defendants to leave Plaintiff alone when he is farming or auditing.

### VII.

Order Defendant Perdue to stop the USDA AMS audit program immediately.

### VIII.

Issue declarative judgement that the enforcement of the FDA FSMA law and regulations, in a manner that unreasonably impairs the ability of the Plaintiff to operate a legitimate farm, is unconstitutional.

### IX.

Grant such other and further relief as this Court may determine to be just and necessary.

DATED:    2/13/2018    Respectfully submitted,

By: _____

Michael B. Hari, Pro Se

Michael Hari
209 W 1st North
Clarence IL 60960
(830) 213 0958

Plaintiff's Original Complaint        - 16 -